# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SONG KOPPENHAVER, )
　)
　　　　　Plaintiff, )
　)
vs. )
　) Case No. 12-2286-JAR-KGG
UNIFIED SCHOOL DISTRICT )
NO. 500, et al., )
　)
　　　　　Defendants. )
_____)

## MEMORANDUM AND ORDER

Plaintiff Song Koppenhaver brings this lawsuit against defendants Unified School District No. 500 ("U.S.D. 500" or "the District"), as well as members of U.S.D. 500's Board of Education, the District Superintendent and several administrators (collectively "Individual Defendants"), asserting various employment and racial discrimination claims. This matter is before the Court on Individual Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 35). For the reasons explained in detail below, the Court grants Individual Defendants' motion.

I.  **Background**

The following facts are alleged in Plaintiff's Complaint and construed in the light most favorable to Plaintiff. Plaintiff was employed as a teacher, counselor, and administrator for the Kansas City, Kansas, school district beginning in 1996. Plaintiff consistently had excellent performance reviews as a teacher and counselor.

Plaintiff served as an assistant principal at Northwest Middle School for the 2008-2009 and 2009-2010 school years. Plaintiff alleges that when she was at Northwest, she was subjected to harassment and discriminatory treatment because she is not African-American and is of the

Hmong national origin. In May 2010, Plaintiff reported the harassment to Defendant Tom Petz, who was the Human Resources Director at the time. Petz attended a meeting with Plaintiff and the administrators who had harassed Plaintiff and threatened her with a disciplinary write-up. Petz told the administrators that they were out of line and needed to stop the harassment. Plaintiff was never evaluated as an assistant principal at Northwest, which was in violation of the policies of the school district.

The District transferred Plaintiff to serve as an assistant principal at West Middle School for the 2010-2011 school year. During that year, Plaintiff was treated differently than a similarly-situated African-American male administrator. In December 2010, Plaintiff met with Defendant Shelly Beech, who was principal at West at the time. Instead of discussing her formal goals in accordance with the District's evaluation procedures, Beech gave Plaintiff three areas of improvement to work on. On April 2, 2011, Plaintiff received a reprimand from Beech that stated that Plaintiff had used poor judgment when removing a cell phone from a student's shirt.

On May 5, 2011, Plaintiff learned that the District administrators intended to recommend to the Board of Education that her administrative contract not be renewed and that she would be transferred to an English as Second Language ("ESL") teaching position for the reason that she exhibited poor judgment. On May 9, 2011, in accordance with District policy, Plaintiff requested a meeting with the Superintendent, Defendant Cynthia Lane, to appeal the non-renewal of her administrative contract with the District. In her written request, Plaintiff informed Lane of the harassment she had experienced during the prior school year and that she believed her non-renewal was in retaliation for reporting the harassment. On May 10, 2011, the Board of Education adopted the decision not to renew Plaintiff's administrative contract, and on

May 13, 2011, Plaintiff received a letter from the Board informing her of their decision and giving her ten days to appeal from receipt of the notice.

Instead of meeting with Plaintiff, Lane referred Plaintiff to Defendant Edwin Hudson, the District's Human Resources Director. Hudson met with Plaintiff on May 17, 2011, to discuss her appeal of the Board's decision not to renew her administrative contract. On May 21, 2011, Plaintiff received a letter from Hudson dated May 20, which stated the decision not to renew her administrative contract was appropriate.

Plaintiff then requested a meeting with the Board and sent a request to Hudson for direction for filing a formal appeal of their decision. On May 26, 2011, Plaintiff requested complaint resolution to Superintendent Lane, pursuant to Board policy. In this request, Plaintiff informed Lane that the District had violated several Board policies and that she believed that the actions were a continuing pattern of harassment and/or retaliation based upon race, gender and/or national origin. On June 3, 2011, Plaintiff received notice that the Board would meet with her on June 14, 2011.

District policy for assignments for the following school year is that employees are notified of their assignments on their last "duty day," that is, the last day on the job for the school year that is ending. Plaintiff's last duty day for the 2010-2011 school year was June 10, 2011.

The morning of June 14, 2011, Plaintiff was offered a teaching position from the District as an ESL teacher at Bishop Ward High School, and she accepted the position. At the Board meeting later that day, Plaintiff contested her non-renewal and opposed the District's actions as discriminatory because she was not African-American, and that the decision to not renew her

administrative contract was in retaliation for the harassment complaint she filed in 2010.

The next day, the District presented Plaintiff with a different ESL teaching position offer at J.C. Harmon High School, with numerous performance directives and conditions attached, and which was not in the recognized form of a contract for such a position. The District gave Plaintiff twenty-four hours to accept the "reassignment."

Plaintiff filed her first charge of discrimination and retaliation with the EEOC on June 16, 2011, and informed Superintendent Lane she was doing so that day. She also returned the District's June 15 letter, and informed District officials that she fully expected to be employed with the District the next school year. She also cited the June 15 offer as another instance of discriminatory treatment, which was also contrary to Board policy.

The District decided on July 1, 2011 that it would no longer consider Plaintiff for employment. Plaintiff was notified by certified letter dated July 19, 2011, that the ESL teaching position at J.C. Harmon was withdrawn. The District then terminated Plaintiff's employment.

Plaintiff subsequently applied for numerous other teaching and administrative positions for which she is qualified, but was not contacted, interviewed or hired for the 2011-2012 school year. Plaintiff alleges that she was and still is being discriminated against by Defendants because of race, gender and national origin, and in retaliation for exercising her rights, including: suffering adverse criticism, interrogation, demotion, and termination that were not suffered by other black administrators; that discriminatory and retaliatory animus is evident from Defendants' terminating her employment, disregarding her contract, and violating District policies and procedures; and that upon information and belief, the District has given Plaintiff poor references after her termination. Plaintiff alleges that the reasons the District provided for

4

her termination were pretextual.

Based on these allegations, Plaintiff asserts five causes of action. Counts I and II are claims against U.S.D. 500 for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Count III is a claim against U.S.D. 500 and the Individual Defendants for racially discriminatory discharge and disparate treatment in violation of 42 U.S.C. § 1981. Count IV is a claim against U.S.D. 500 and Individual Defendants under 42 U.S. C. § 1981 and under § 1983 for violations of Plaintiff's right to equal protection under the Fourteenth Amendment. Count V is a *Monell*[1] claim under § 1983 against U.S.D. 500 and Individual Defendant Board members Willis, Breidenthal, Evelyn Hudson, Jones, Kaminski, Meyer, Pendleton and Watson. Plaintiff sues the Board member Individual Defendants in both their individual and official capacities. Individual Defendants Lane, Edwin Hudson and Shelly Beech are sued in their individual capacities only.

## II. Standard of Review

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[3] The allegations must be

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

[2] *Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

5

enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[4] As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5] Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## III. Discussion

### A. Duplicative Claims

The Individual Defendant Board members move to dismiss the claims asserted against them in their official capacity as duplicative of Plaintiff's claims against U.S.D. 500. Plaintiff does not object to dismissal of the official capacity claims asserted against these Defendants in Counts III and IV, as those claims are no longer necessary given that Defendant U.S.D. 500 has answered.[7]

Plaintiff does object, however to dismissal of the *Monell* claims asserted against the Individual Board member defendants in Count V, arguing that she properly alleges that these Defendants can be sued directly in their official capacities because the action alleged to be

---

[4]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008). "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[6]*Id.*

[7]*See Rubio v. Turner U.S.D. 202*, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official capacity suit is treated as a suit against it.")).

unconstitutional implements or executes Board policy. The Court disagrees.

A *Monell* claim seeks to impose municipal/local government entity liability under § 1983.[8] In order to state a claim against U.S.D. 500, Plaintiff must allege with the requisite factual particularity that the alleged unconstitutional action implements or executes a municipal policy or occurs pursuant to a custom.[9] Plaintiff alleges that Individual Defendant Board members were final policy makers for the District, had policies, practices and customs that operated to deprive Plaintiff of her constitutional rights by subjecting her to demotion and termination, and failed to maintain a program of adequate training in personnel policies and procedures.[10] As the Supreme Court has held, an official-capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.[11] In other words, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and not as a suit against the official personally, "for the real party in interest is the entity."[12] Thus, while Plaintiff is correct that an Individual Defendant Board member may be sued in their official capacity in a *Monell* action, to sue both the District and all of the Individual Defendant Board members is redundant, as the official capacity claims are the same as a suit against the District. Regardless of whether the claim in Count V is characterized as one against the District or one against the Board members in their official capacities, this portion of the

---

[8]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

[9]*S.S. ex rel. Sandidge v. Turner Unified Sch. Dist. No. 202*, No. 12-2346-CM, 2012 WL 6561525, at *2 (D. Kan. Dec. 14, 2012) (citing *Monell*, 436 U.S. at 690-91).

[10]Doc. 1 at 15-16.

[11]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[12]*Id*. at 166.

7

claim is really against the District, and its potential liability under § 1983 is subject to the rule of *Monell*.[13] Accordingly, the Court also dismisses the official capacity claims against Individual Defendant Board members Willis, Evelyn Hudson, Breidenthal, Jones, Meyer, Pendleton and Kaminski in Count V.[14]

### B. Rule 12(b)(6)/Qualified Immunity

Individual Defendants argue that Plaintiff's individual capacity allegations fail to state a claim upon which relief can be granted and, alternatively, that they are entitled to qualified immunity.

#### 1. Section 1981 and Section 1983

Count III asserts a claim of unlawful discrimination based on race in violation of § 1981. Count IV incorporates by reference the facts in Count III, and alleges that the Individual Defendants violated Plaintiff's right to equal protection under § 1983 by discriminating against her on the basis of her race and/or national origin. Specifically, Plaintiff asserts that her termination and the discriminatory terms of her employment, including "intrusive and disparately harsh scrutiny," violated her rights under the Fourteenth Amendment.

Initially, the Court finds that Plaintiff's stand alone claim under § 1981, set forth in Count III, is subject to dismissal as § 1983 is the sole means for Plaintiff to pursue a § 1981

---

[13]*Dunn v. City of Newton*, No. 02-1346-WEB, 2003 WL 21497002, at *1 (D. Kan. Apr. 15, 2003) (citing *Graham*, 473 U.S. at 167, n.14 (noting "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive relief or declaratory relief.")).

[14]*Bell v. City of Topeka, Kansas*, 496 F. Supp. 2d 1182, 1184, n.1 (D. Kan. 2007) (holding that official capacity claims against employees of the City of Topeka are duplicitive when the City of Topeka is also a named defendant).

claim against state actors for claims of discrimination in the terms and conditions of a municipal employment contract.[15] Thus, § 1981 does not provide an independent cause of action against Individual Defendants, who as U.S.D. 500 Board members and employees of the District are state actors for purposes of this action.[16]

Individual Defendants' second argument is that Plaintiff has failed to allege facts sufficient to overcome their defense of qualified immunity. Qualified immunity can be raised in a motion to dismiss.[17] To survive this challenge Plaintiff must demonstrate that: (1) the facts alleged "make out a violation of a constitutional right," and (2) the "right at issue was 'clearly established' at the time of [the] alleged misconduct."[18]

Of course, Plaintiff's right not to be subjected to racial discrimination is clearly established, as any reasonable official who discharges an employee on the basis of her race would understand that doing so violates the employee's rights under § 1981.[19] Thus, the Court addresses whether the alleged sufficient facts make out a plausible claim under § 1983 for violations of rights secured by § 1981. Although "the 12(b)(6) standard does not require that

---

[15]*Bolden v. City of Topeka*, 441 F.3d 1129, 1134-37 (10th Cir. 2006) (citing *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701 (1989)); *Felton v. Polles*, 315 F.3d 470, 479 (5th Cir. 2002) (explaining while section 1981 does not provide an independent casue of action against individuals acting under color of state law, such individuals may by personally liable under section 1983 for the violation of rights secured by section 1981) (collecting cases); *Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1240-41 (D. Kan. 2005) (dismissing § 1981 claim against the school district and its director of human resources). Defendant U.S.D. 500 has not moved to dismiss Count III on these grounds.

[16]*See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935, n.18 (1982) (explaining state employment is generally sufficient to render a defendant a state actor).

[17]*Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

[18]*Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[19]*Ramirez v. Dep't of Corrections*, 222 F.3d 1238, 1244 (10th Cir. 2000) (holding the district court properly denied the defendant's Rule 12(c) motion for qualified immunity because the law is clearly established that racial discrimination in employment violates § 1981).

Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set out a plausible claim."[20]  "In racial discrimination suits, the elements of a plaintiff's case are the same whether the case is brought under §§ 1981 or 1983 or Title VII."[21]  "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."[22]

Plaintiff has failed to allege sufficient facts to show that her demotion and termination constitutes disparate treatment, harassment and discrimination.  Although Plaintiff satisfies the first two elements of her prima facie case, she has not sufficiently identified similarly situated employees who were not demoted or terminated for comparable conduct.[23]  Individuals are considered "similarly situated" when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of "comparable seriousness."[24]

Plaintiff's Complaint alleges that she was demoted and terminated in part because she exercised "poor judgment" when dealing with a student.  She claims that during the 2010-2011 school year, she "was treated differently than a similarly situated African-American, male

---

[20]*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[21]*Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)).

[22]*Id*. (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)).

[23]*Orr*, 417 F.3d at 1149.

[24]*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (analyzing whether employee was "similarly situated" in Title VII race discrimination case); *see Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (applying "similarly situated" test to §§ 1981 and 1983 claims).

administrator,"[25] and that Defendants "subjected [her] to different terms and conditions of employment—including intrusive and disparately harsh scrutiny—than those that were afforded African-American employees in same or similar situations."[26] Plaintiff fails to present specific facts about whether these employees and administrators also exercised poor judgment and how the punishment, consequences, or treatment, if any, given to these similarly situated administrators differed from her demotion and termination. Because Plaintiff has not identified a specific comparator or group of comparators in her Complaint, that is, an African-American, male administrator who was not demoted or terminated for exercising poor judgment, she has not plausibly alleged that her termination was based on discriminatory animus.[27] Plaintiff's general allegations that she was treated differently than an African-American, male administrator and subjected to different treatment than similarly situated African-American employees, with no further detail regarding who these employees are or why they were similarly situated, is insufficient to raise a viable claim of discrimination because they are wholly conclusory and provide only a "formulaic recitation" of the elements of a claim.[28] Accordingly, Plaintiff has not alleged a plausible constitutional or statutory violation, and the Individual Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim in Count IV.

---

[25] Doc 1 at ¶ 35.

[26] *Id.* at ¶ 89

[27] *See Lawrence v. School Dist. No. 1*, No. 11-cv-2789-PAB-KMT (D. Colo. Mar. 4, 2013) (dismissing § 1983 equal protection claim based on her race-based discriminatory termination where plaintiff failed to sufficiently present specific facts about alleged similarly situated social workers) (citing cases); *cf. Townsend-Johnson v. Cleveland*, 494 F. App'x 833, 837 (10th Cir. 2012) (finding that a plaintiff had sufficiently alleged an equal protection claim by "identifying a specific group of individuals—non-female-African-American principals in Rio Rancho school district [who were not terminated even though their] schools did not meet AYP goals").

[28] *Khalik*, 671 F.3d at 1193.

## 2. *Monell* Claim

In *Monell*, the Supreme Court held that a municipality/local government entity cannot be held liable under § 1983 merely on account of the unauthorized acts of its agents.[29] Under § 1983, local governments are responsible only for "their own illegal acts."[30] Thus, to succeed upon her *Monell* claim in Count V, Plaintiff must allege and prove that the District caused a constitutional violation through an official policy or custom that was the direct cause or moving force behind the constitutional violation.[31] Official policy includes acts of the District's policymaking officials and practices so persistent and widespread as to practically have the force of law."[32]

Here, Plaintiff alleges that Individual Defendant Board members were final policy makers for the District, had policies, practices and customs that operated to deprive Plaintiff of her constitutional rights by subjecting her to demotion and termination, and failed to maintain a program of adequate training in personnel policies and procedures.[33] While these allegations

---

[29]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978) (rejecting section 1983 claim based on respondeat superior theory).

[30]*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 691).

[31]*Rassel v. Werholtz*, No. 07-3290-KHV, 2009 WL 1518118, at *3 (D. Kan. June 1, 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986)).

[32]*Connick*, 131 S. Ct. at 1359; *Monell*, 436 U.S. at 691.

[33]Doc. 1 at 15-16.

appear sufficient to state a claim against the District,[34] which has not moved for dismissal, Plaintiff has not stated a claim against Individual Defendant Board members. Indeed, a *Monell* claim is the means by which to impose municipal/local government entity liability against the District under § 1983 for the unconstitutional acts of the Individual Board members, who have been sued under § 1983 in their individual capacities, albeit insufficiently.

**IT IS THEREFORE ORDERED BY THE COURT** that Individual Defendants' Motion to Dismiss (Doc. 35) is GRANTED. Plaintiff's official capacity claims against Individual Defendants in Counts III, IV and V are dismissed as redundant; the Individual Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims in Count IV; and Plaintiff has failed to state an individual capacity claim against Individual Defendants under Counts III and V.

**IT IS SO ORDERED.**

Dated: April 18, 2013

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[34]*See S.S. ex rel. Sandidge v. Turner Unified Sch. Dist. No. 202*, No. 12-2346-CM, 2012 WL 6561525, at *2 (D. Kan. Dec. 14, 2012) (elaborating on standard and four ways to state a claim against a municipality, including by alleging that the actor has policy making authority and that the injuries were caused by deliberately indifferent training or supervision) (collecting cases).